[36 NYS3d 690]

In the Matter of Howard Schneider, an Attorney, Respondent. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, Petitioner.

Second Department, August 24, 2016

## APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Kathryn Donnelly Gur-Arie* of counsel), for petitioner.

*Michael S. Ross*, New York City, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a verified petition dated July 10, 2015. Following a pretrial conference on October 28, 2015, and a hearing on November 24, 2015, the Special Referee sustained all the charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as the Court deems just and proper. The respondent moves to enlarge his time to serve and file papers in support of the Grievance Committee's motion, in which he argues that the appropriate sanction is a public censure.

Charge one, as amended, alleges, inter alia, that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). The respondent maintained an escrow account at Signature Bank entitled "Howard I. Schneider, Attorney Escrow Account." Since in or about 2002, the respondent has represented George Kaufman in various real estate development and commercial matters. The respondent held funds in the escrow account on behalf of Kaufman for disbursement at the direction of Kaufman. The

respondent also held funds in the escrow account on behalf of other clients. Between on or about May 29, 2014 and on or about November 13, 2014, the respondent disbursed, on Kaufman's behalf, more funds from the escrow account than he was holding in that account on Kaufman's behalf. The disbursements made during that time period on behalf of Kaufman cleared against funds the respondent was holding in the escrow account on behalf of other clients.

Charge two alleges that the respondent improperly entered into a business transaction with a client, in violation of rule 1.8 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about 2010, the respondent and Kaufman reached an agreement whereby the respondent could, for his personal use and without interest, borrow funds he was holding in the escrow account on behalf of Kaufman. They further agreed that the respondent would repay any borrowed funds, although no time was agreed upon. The respondent failed to transmit, in writing, the terms of the loan agreement to Kaufman. The respondent failed to advise Kaufman, in writing, of the desirability of seeking the advice of independent legal counsel regarding the loan agreement. The respondent failed to obtain Kaufman's informed consent, in writing, to the essential terms of the loan agreement and the respondent's role with respect thereto, including whether the respondent would be representing him regarding the loan agreement.

Charge three alleges that the respondent failed to maintain required bookkeeping records for his escrow account, in violation of rule 1.15 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0). The respondent failed to keep a ledger or similar record showing the source of all funds deposited in the escrow account, the names of all persons for whom funds were held in the escrow account, the amount of funds held in the account, and a description of the funds disbursed from the escrow account, including the names of all persons to whom the funds were disbursed.

Based on the evidence adduced, and the respondent's admissions, the Special Referee properly sustained the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.

The hearing evidence revealed that the respondent was working at a law firm until 2002, when, at Kaufman's invitation, he left that firm to work exclusively for Kaufman. Kaufman, a Brooklyn real estate developer, was a close friend of the respon-

dent. The respondent testified that their arrangement was for the respondent to work as a solo practitioner out of office space provided by Kaufman, but "basically [his] function was really to act as in-house counsel" for Kaufman on his various projects. While he worked for Kaufman, the respondent maintained funds for Kaufman in his escrow account and made disbursements at his direction.

In 2008 and 2009, Kaufman did not have enough work to keep the respondent busy, and, with Kaufman's permission, the respondent began to take on other clients. The respondent took in and disbursed funds on behalf of those other clients, utilizing the same escrow account in which he was holding Kaufman's funds. At or around the same time, there was a downturn in the real estate market. The respondent was unable to generate sufficient income, and he asked Kaufman if he could borrow against the money being held in his escrow account until such time as Kaufman would have work for him, at which point the respondent would reimburse Kaufman. Kaufman agreed to allow the respondent to borrow funds from the account. During the investigation of this matter, Kaufman confirmed to the Grievance Committee, in writing, that he had given permission to the respondent to borrow funds that were being held in the escrow account on his behalf.

This matter came under investigation when two checks in the amount of $500 each were returned for insufficient funds. The client on whose behalf the checks were disbursed was promptly reimbursed; however, the investigation by the Grievance Committee revealed serious escrow violations, including the respondent's failure to maintain any record-keeping system for his escrow account and instances where the funds of clients other than Kaufman had been invaded. The respondent candidly testified at the hearing that during the time in question he thought that he had more money in his escrow account than he actually had, and because he did not keep accurate records and books, he unknowingly made payments on behalf of Kaufman utilizing other clients' funds. On September 24, 2014, the respondent deposited $144,321.92 of his personal funds into his escrow account, representing funds he should have been holding for Kaufman. On or about December 5, 2014, the respondent deposited an additional $63,000 of his personal funds into his escrow account, $58,599.45 of which he should have been holding for Kaufman.

The respondent has no prior disciplinary history.

The respondent contends that the appropriate discipline is a public censure when the following mitigating factors are considered: the absence of any intent to convert client funds; the aberrational and isolated nature of his misconduct; his acceptance of responsibility for his misconduct; his cooperation with the investigation; his sincere remorse; his unblemished disciplinary history in 30 years of practice; his contributions to his community, including his teaching of classes on Talmudic law; his reputation as a lay leader and Talmudic scholar within his religious community; his generally excellent reputation as an honest and compassionate attorney; and the fact that he has learned from his mistakes and has undertaken remedial measures to avoid committing the same errors in the future.

Notwithstanding the aforementioned mitigating factors, it cannot be said that the misconduct was isolated. The evidence revealed that the respondent's failure to maintain any records for his escrow account extended for virtually the entire length of his career as a lawyer in private practice. Moreover, the respondent borrowed against funds in his escrow account, albeit with his client's permission. Not only did the respondent not comply with rule 1.8 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), but he also failed to keep records of the amounts he borrowed. The dangers of that behavior rose dramatically once the respondent took on other clients, and deposited funds belonging to those other clients into the same escrow account. The respondent's mismanagement of his escrow account can only be characterized as a serious violation of the rules governing the proper maintenance of an escrow account. That serious violation, in turn, resulted in the invasion of funds the respondent was holding on behalf of clients other than Kaufman.

Taking into consideration the totality of the circumstances in this matter, including the special relationship that existed between the respondent and Kaufman, both personal and business; the fact that the respondent was granted permission by Kaufman to borrow against the account; the substantial mitigation as outlined above; the fact that the single client whose checks were returned for insufficient funds was promptly reimbursed and made whole; and the protracted nature of the respondent's failure to maintain proper records, which we consider to be an aggravating factor, we find that a suspension from the practice of law for one year is warranted.

ENG, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.

Ordered that the respondent's motion to enlarge his time to serve and file papers in support of the Grievance Committee's motion to confirm the Special Referee's report is granted, the respondent's time is enlarged, the papers submitted by the respondent to the Clerk of this Court are accepted for filing and deemed timely served, and those papers have been considered on the Grievance Committee's motion to confirm; and it is further,

Ordered that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Howard Schneider, is suspended from the practice of law for a period of one year, commencing September 23, 2016, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than March 23, 2017. In such application, the respondent shall furnish satisfactory proof (1) that during the said period he refrained from practicing or attempting to practice law, (2) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) that he has complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c), and (4) that he has otherwise properly conducted himself; and it is further,

Ordered that the respondent, Howard Schneider, shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, Howard Schneider, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Howard Schneider, has been issued a secure pass by the Office of Court Administration, it

64

shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).